UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:15cv107-FDW

| ROCKY LEE DEWALT, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| DAVID MITCHELL, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court upon Petitioner Rocky Lee Dewalt's pro se Petition for Writ of Habeas Corpus, see 28 U.S.C. § 2254. (Doc. No. 1.) Also before the Court are Respondent's Motion for Summary Judgment (Doc. No. 9) and Petitioner's letter motion for discovery (Doc. No. 12).

## I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina who was convicted on December 19, 2013, after a jury trial in Alexander County Superior Court, of felonious burning of property and attaining the status of habitual felon. State v. Dewalt, 767 S.E.2d 150, 2014 WL 6433009 at *1 (N.C. Ct. App. 2014) (unpublished), appeal dismissed, review denied, 767 S.E.2d 532 (N.C. 2015). The North Carolina Court of Appeals summarized the State's evidence at trial as follows:

> At around 4:15 p.m. on 1 November 2011, Alexander Correctional Institution Officer Christopher Murray observed smoke coming through the crack at the top of the door of Defendant's cell. Defendant was the only person in his cell in the prison's segregation unit. Officer Murray was unable to see the source of the fire because Defendant had covered the cell door window with a towel and refused to remove it. The smoke set off a fire alarm.
>
> The supervisor of the prison's segregation unit asked Defendant to remove the towel and he complied. The supervisor then instructed Defendant to "submit to cuffs," but Defendant refused. Defendant demanded that officers come in and get him out, whereupon Defendant was forcibly removed from his cell by an extraction team.

1

> The entire wing of the prison was evacuated. Each individual inmate was examined by medical personal for injuries resulting from smoke inhalation.
>
> Following Defendant's removal from his cell, Officer Murray discovered burnt toilet paper and a burnt bed sheet in Defendant's trash can, which had also been burned. Following this incident, Defendant told a staff psychologist during an evaluation that he was not trying to injure anyone by his actions, but that he burned the items so that he would be moved to a different facility.

Id.

After the jury returned a guilty verdict for felonious burning of personal property, the trial court held a habitual felon status hearing. Petitioner attempted to admit his status; however, the trial court rejected the plea and submitted the matter for the jury. Id. The jury subsequently found Petitioner guilty of attaining the status of habitual felon. Id. The trial court sentenced Petitioner to a prison term of 77 to 102 months. Id.

On November18, 2014, the North Carolina Court of Appeals filed an unpublished opinion finding no error, id., and on January 22, 2015, the North Carolina Supreme Court denied discretionary review. State v. Dewalt, 767 S.E.2d 532 (N.C. 2015). According to his habeas Petition, Petitioner has not filed any other "petitions, applications or motions, with respect to these convictions, in any state court[.]" (Pet. 3, Doc. No. 1.)

Petitioner filed the instant habeas Petition when he signed and placed it in the prison mailing system on August 1, 2015. (Pet., supra, at 14.) After conducting an initial review required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court ordered Respondent to answer the Petition. Respondent thereafter filed an Answer (Doc. No. 8), Motion for Summary Judgment (Doc. No. 9), and Memorandum of Support (Doc. No. 10) with exhibits. This Court issued Petitioner two notices pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), explaining his right to respond to the substance of the Motion for Summary Judgment. (Doc. Nos. 11, 13.) Petitioner has responded

with letters seeking a copy of "video of the day room in G-Block" that he contends was recorded on the day he was accused of burning property. (Doc. Nos. 12, 17.) The Court has construed Petitioner's letter docketed on November, 18, 2015 (Doc. No. 12) as a Motion for Discovery. (Doc. No. 13.)

## II. STANDARDS OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B. The Antiterrorism and Effective Death Penalty Act of 1996

**(1) Exhaustion**

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2244 and §§ 2253-2254. Breard v. Pruett, 134 F.3d 615, 618 (4th Cir. 1998). AEDPA requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. § 2254(b)(1)(A). To meet the exhaustion requirement, a petitioner must provide the state courts a full and fair opportunity to resolve federal constitutional claims before those claims

3

are presented through a habeas petition in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). To provide the state this opportunity, the petitioner must "'fairly present' his claim in each appropriate state court . . ., thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004). "Fair presentation" requires a petitioner to provide the state courts "both the operative facts and the controlling legal principles" associated with the claim. Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000) (citation omitted).

**(2) Procedural Default**

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard, 134 F.3d at 619. One way in which procedural default occurs is when "a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Id. (internal quotation marks omitted).

A federal habeas court will not review a claim that is procedurally defaulted absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court declines to review the claim. See Wright v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998). To show cause, a petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," Murray v. Carrier, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding," Roach v. Angelone, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, [a p]etitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000) (citing Coleman, 501 U.S. at 750). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. "Actual innocence,"

however, requires "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

### (3) Merits Review

For those claims adjudicated on the merits in the state courts, federal habeas review is highly deferential to the state court decision. A federal court may not grant habeas relief unless the state court arrived at "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2012).

The habeas court must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence. § 2254(e)(1). Moreover, the court may not disturb the state court's ruling simply because it is incorrect; it must also be unreasonable. Harrington v. Richter, 562 U.S. 86, 100–01 (2011). In other words, "the state court's ruling" must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id., at 103.

## III. DISCUSSION

### A. Procedurally Defaulted Claims

Respondent contends that Grounds Two and Three of the § 2254 Petition are procedurally defaulted on federal habeas review. In his second ground for relief, Petitioner claims that the trial court erred in failing to instruct the jury on the lesser offense of misdemeanor burning of property. (Pet. 6-7, Doc. No. 1.) In his third ground for relief, Petitioner claims that the trial court violated his right to due process by allowing prison officials to testify about his housing status and prior bad acts during incarceration. (Pet., supra, at 8.) Respondent asserts

that neither of these claims were exhausted in the state courts and that the state court to which Petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker, 220 F.3d at 288 (citing 28 U.S.C. § 2254(b)(1); O'Sullivan, 526 U.S. at 842). Although he raised the substance of Ground Two on direct appeal in the North Carolina Court of Appeals, Dewalt, 2014 WL 6433009 at *4-5, Petitioner did not raise the issue in his Petition for Discretionary Review ("PDR") in the North Carolina Supreme Court (Doc. No. 1-6 at 6-20), the state's highest court. Because he did not present this issue to the North Carolina Supreme Court, it is unexhausted. See O'Sullivan, 526 U.S. at 847 (announcing that the exhaustion rule requires state prisoners to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the state). Moreover, Petitioner would now be procedurally barred from seeking discretionary review of this claim in the North Carolina Supreme Court. See N.C. R. App. P. 15(b) ("A petition for [discretionary] review following determination by the Court of Appeals shall be . . . filed and served within fifteen days after the mandate of the Court of Appeals has been issued to the trial tribunal."); N.C. R. App. P. 32(b) ("Unless a court orders otherwise, its clerk shall enter judgment and issue the mandate of the court twenty days after the written opinion of the court has been filed with the clerk."). Therefore, Ground Two of the instant habeas Petition is procedurally defaulted here.

Ground Three of the Petition is procedurally defaulted for similar reasons. On direct review before the North Carolina Court of Appeals, there were two components to Petitioner's claim. The first alleged that evidence Petitioner was housed in the prison's maximum control

unit violated state evidentiary law. (Def.-Appellant's Br. 15-19, Doc. No. 1-3.) The second alleged that evidence Petitioner was shackled and guarded every time he left his cell violated state evidentiary law and the federal Due Process Clause of the United States Constitution. (Def.-Appellant's Br., supra, at 19-22.) In Petitioner's PDR, however, all of the evidence was challenged on state law grounds only. (PDR 16-19, Doc. No. 1-6.)

The exhaustion rule requires that a petitioner raise the same federal claim in all appropriate state courts. Baldwin, 541 U.S. at 29 (The petitioner must "'fairly present' his claim in each appropriate state court . . ., thereby alerting that court to the federal nature of the claim.") Furthermore, a petitioner must have expressly raised the same federal constitutional claim in state court that he raises in federal court. See Duncan v. Henry, 513 U.S. 364, 366 (1995). In this case, Petitioner's PDR did not "fairly present" a federal constitutional claim related to evidence of his housing status, prior bad acts, or shackling.

Because he did not present the substance of Ground Three as a federal constitutional claim to the North Carolina Supreme Court, it is unexhausted. See O'Sullivan, 526 U.S. at 847. As with Ground Two, Petitioner would be procedurally barred from seeking discretionary review in that court now. See N.C. R. App. P. 15(b), 32(b). Therefore, Ground Three of the instant habeas Petition is procedurally defaulted here.

Petitioner has not asserted cause and prejudice to excuse the default of either Ground Two or Three. See Wright, 151 F.3d at 160. Nor has he argued that a fundamental miscarriage of justice will occur if the Court declines to consider either ground. See id. Consequently, the Court shall not review Grounds Two and Three, and summary judgment shall be granted to Respondent.

    **B.**    **Competency Issues**

In his two remaining claims, Grounds One and Four, Petitioner contends that the trial court violated his due process right to a fair trial when it failed to consider his competency before proceeding with the habitual felon phase of the trial after it had refused to accept his guilty plea based on a determination that he did not understand "what was going on." Petitioner argues that if he was not competent to enter a guilty plea, he was not competent to proceed with the habitual felon phase of his trial. The state appellate court rejected Petitioner's claim on the merits, concluding that he had failed to show there was "substantial evidence" before the trial court that he was incompetent at the time of the habitual felon phase of his trial. Dewalt, 2014 WL 6433009 at *5-7.

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975). "[F]ailure [of the court] to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." Id. at 172 (citing Pate v. Robinson, 383 U.S. 375 (1966)).

"When the capacity of the defendant to proceed is questioned," North Carolina law requires that the court "hold a hearing to determine the defendant's capacity to proceed." N.C. Gen. Stat. § 15A–1002(b) (2011); see also State v. Young, 231 S.E.2d 577, 581 (N.C. 1977) ("[A] trial court has a constitutional duty to institute, sua sponte, a competency hearing if there is substantial evidence before the court indicating that the accused may be mentally incompetent." (alteration in original; citation and quotation marks omitted)). A defendant lacks the capacity to proceed when "by reason of mental illness or defect he is unable to understand the nature and

8

object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner." N.C. Gen. Stat. § 15A–1001(a) (2011).

The state appellate court found that the trial court refused to accept Petitioner's guilty plea at the habitual felon proceeding because the plea was *uninformed*, not because Petitioner was incompetent to enter a plea. Dewalt, 2014 WL 6433009 at *6 ("In other words, the trial court's concern was not that Defendant was incompetent, but that he was not fully informed about his plea."). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). A defendant enters a guilty plea intelligently when he is "advised by competent counsel, . . . made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties." Brady v. United States, 397 U.S. 742, 756 (1970). A guilty plea is voluntary if "entered by one fully aware of the direct consequences" of the plea. Id. at 755 (citation omitted). Under North Carolina law, a trial court may only accept a plea if it is "the product of the informed choice of the defendant and . . . there is a factual basis for the plea." N.C. Gen. Stat. § 15A–1023(c) (2011).

Petitioner did not decide to admit his habitual felon status until after the habitual felon phase had begun. Indeed, Petitioner's attorney had informed the trial court that Petitioner wanted a hearing on the status issue, and the trial court was in the process of informing the jurors of their role in the habitual felon phase when Petitioner changed his mind and decided to plead guilty to attaining habitual felon status. (Plea Tr., 212, 214-15, Doc. No. 10-2.) During the plea

9

colloquy, the trial court confirmed that Petitioner had taken medication that morning to control his hyperactivity and "agitation." (Trial Tr. 184, 186; Plea Tr. 217-21, Doc. No. 10-2.) The following exchange ensued:

> THE DEFENDANT: Like this, [the medication] helps to prevent it, but sometimes it gets confusing because I don't understand how I'm getting, why I'm, if I'm getting railroaded or people are doing this out of spite because I don't plead to one of the things, they try to throw the book at me because I need to plead to the case. I don't understand not really what's going on with this stuff, but I feel like it's in my best interest because I only had a year to go. I'm doing so much time now for the charges that I'm at. I'm trying to get back out there. They kept me eight hard years for something I didn't really do. All the drug stuff I did, you know what I'm saying, but some stuff I got set up and I been going all this time in prison.
>
> The misdemeanor time and stuff, it come to prison, the people, they be falsely accusing me, but everybody against me because they planned this out. They said stick to the plan, stick to the plan. They going against me and trying to set me up as if I'm the bad person. And sometimes I admit I do get frustrated and get angry, but the time where they doing all this charges and stuff, they can revoked a lot of that stuff they revoked.
>
> Like the trial I had, Bush, he was the man with the camera. He came to my door with the camera and he stated out of his mouth I do not smell no smoke, I do not see no fire in [his] room. I have the camera, and we were there with the camera. I didn't see nothing burnt in the room. But this attorney right here stated they all, all these people's right here[.]
>
> THE COURT: The jury has convicted you of that.
>
> THE DEFENDANT: I understand that, but --
>
> THE COURT: Let me ask you this. Have you talked with Mr. Darty about the status of becoming an habitual felon, that is, having at least three prior felonies on your record?
>
> THE DEFENDANT: Three prior felonies --
>
> THE COURT: Have you talked to him about that?
>
> THE DEFENDANT: Briefly, but --
>
> THE COURT: Has he explained to you the nature of that status, and do you understand the nature of that status, what is required in order for you to be determined to have the status of habitual felon?
>
> THE DEFENDANT: I stated, only three felonies. I had three felonies, and just one they put me would be four felonies, something like that.

> THE COURT: Right. Right.
>
> THE DEFENDANT: So I—yeah, I understand, but I don't.
>
> THE COURT: Well, if you don't understand, I'm going to need to let the jury pass on these things, and I'm glad to do that . . . I cannot accept anything from you, [Defendant], that you don't feel like you understand and appreciate. And I'm, you know, I'm good to go with it either way.
>
> THE DEFENDANT: Anyway, I'm going to do some time, but I really don't understand what's really going on, your Honor, and stuff.
>
> THE COURT: I think better course, then, let's just let the jury hear it.
>
> THE DEFENDANT: I let them pass on—go ahead, because I don't know what's going on.
>
> THE COURT: Well if you don't know what's going on, that's the whole problem. I can't take your plea if you don't know what's going on.
>
> THE DEFENDANT: But I accept the plea. I don't know ——
>
> THE COURT: No, I can't let you do that.
>
> THE DEFENDANT: I don't know what's going on, I really don't. I don't really know what's going on. I feel like I'm getting railroaded, any way I go I'm getting railroaded.

(Plea Tr., supra, at 217-21.) Based upon the timing of Petitioner's decision and the foregoing conversation, it was reasonable for the state court to conclude that Petitioner did not understand what was "going on" because he lacked information, not the capacity to understand.

There does not appear to be any question that Petitioner suffered from some sort of mental disorder/issue at the time of his habitual felon status proceeding. It is evident that Petitioner believed that prison officials and others were continually "setting him up" or "framing" him for things he did not do, and that these entire court proceedings were proof of that. These beliefs may have been a function of whatever mental health issues he had.

11

The mere fact that he had a mental health issue does not mean that Petitioner lacked the capacity to proceed, however. Indeed, Petitioner was given a mental health evaluation prior to his trial for burning property, and based on that evaluation, the trial court found him competent to stand trial. (Trial Tr. 4-5, Doc. No. 10-2.) Furthermore, Petitioner associated the State's pursuit of habitual felon status with his rejection of an earlier plea offer, whereby he would have pled guilty to burning property in exchange for the State not seeking habitual felon status (Plea Tr., supra, at 215-16, 241.) That he was able to make that connection indicates competence. Petitioner also understood that admitting his status would result in less prison time than if he continued to challenge it. (Plea Tr., supra, at 218.)

Otherwise, Petitioner's assertions of not understanding, or knowing, "what[ was] going on" can be attributed to a lack of information, rather than an inability to understand. He stated that he had spoken only "briefly" to his attorney about habitual felon status and that it took "three felonies . . . [or] something like that." (Plea Tr., supra, at 220.) He knew he was "going to do some time," but there is no indication that he knew the range of time he was facing. In short, his statements imply ignorance of the exact nature and direct consequences of his plea; they do not imply that he lacked the capacity to understand the nature and consequences of his plea.

Given that Petitioner switched courses and decided to admit his status at the last minute, and considering his lack of understanding regarding the nature of habitual felon status, the better course for the trial court probably would have been to allow defense counsel a few minutes to discuss the plea with Petitioner before throwing the issue to the jury. Nevertheless, the state appellate court's determination that Petitioner failed to show there was "substantial evidence"

before the trial court that he was incompetent at the time of the habitual felon phase of his trial, Dewalt, 2014 WL 6433009 at *5-7, was not contrary to or an unreasonable application of clearly established federal law. Therefore, Respondent is entitled to summary judgment.

### C. Motions for Discovery

Petitioner seeks a copy of "video of the day room in G-Block." (Doc. No. 12.) According to Petitioner, the video will show that there was no smoke coming from his cell, no fire in his cell, and that he was "set up" by corrections officials.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Discovery is granted only for "good cause." Rules Governing Section 2254 Cases, Rule 6(a), 28 U.S.C.A. foll. § 2254. Specifically, discovery is warranted, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief[.]" Bracy, 520 U.S. at 908–09 (citing Harris v. Nelson, 394 U.S. 286, 299–300 (1969)).

The only claim to which Petitioner's discovery request might be relevant is raised in Ground Two. As discussed previously, in Ground Two, Petitioner asserts that he was entitled to a lesser-included offense instruction on misdemeanor burning of property because there was insufficient evidence at trial to prove all of the essential elements of felony burning of property. (Pet. 6-7, Doc. No. 1.)

As also previously discussed, Ground Two is procedurally defaulted. See discussion, supra, at 5-6. A claim of actual innocence can provide a way around the procedural default of another claim, see McCarver, 221 F.3d at 588, but the claim of actual innocence requires "factual innocence, not mere legal insufficiency," Bousley, 523 U.S. at 623. Petitioner does not assert in

13

his Petition that he is actually innocent of burning property in his cell. Indeed, Ground Two is based upon an assertion that he is legally innocent of *felony* burning of property, not that he is factually innocent of burning property. Petitioner has not explained how access to video of the day room will help him fully develop his claim that he was entitled to a misdemeanor instruction on burning property.

To the extent that Petitioner's discovery motion (Doc. No. 12) and other letters to the Court (Doc. Nos. 15-17) attempt to raise a free-standing claim of actual innocence of burning property altogether, that claim is not cognizable on federal habeas review. See Herrera v. Collins, 506 U.S. 390, 400 (1993). Petitioner has failed to show "good cause" warranting discovery of the video he seeks. See Rules Governing Section 2254 Cases, Rule 6(a). Therefore, his motion shall be denied.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DENIED AND DISMISSED**;

2) Respondent's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**;

3) Petitioner's letter/motion for discovery (Doc. No. 12) is **DENIED**; and

4) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484

(2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: May 26, 2016

Frank D. Whitney
Chief United States District Judge